```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

_____
                                    :
JAMES JEAN-LOUIS,                   :
                                    :   Civil Action No. 11-1922 (CCC)
         Petitioner,                :
                                    :
    v.                              :   **MEMORANDUM OPINION**
                                    :
GREG BARTOWSKI,                     :   **AND ORDER**
                                    :
         and                        :
                                    :
PAULA T. DOW,                       :
                                    :
         Respondents.               :
_____:


IT APPEARING THAT:

1.  Petitioner James Jean-Louis ("Petitioner"), currently
    confined at the New Jersey State Prison, Trenton, New
    Jersey, filed a pro se petition ("Petition") seeking a Writ
    of Habeas Corpus, pursuant to 28 U.S.C. § 2254, and
    submitted the required filing fee. See Docket Entry No. 1.
    The Petition was executed on March 29, 2011. See id. at 25.

2.  In his Petition, Petitioner challenges his state court
    conviction for murder, felony murder, aggravated assault,
    robbery, and weapons charges. See State v. Louis ("Louis"),
    2010 WL 2557181 (N.J. Sup. Ct. App. Div. June 25, 2010).

3.  Petitioner asserts that:

  a.  His judgment of conviction was entered on May 24, 1996. See id. at 2.

  b.  The Superior Court of New Jersey, Appellate Division, denied his direct appeal on August 19, 1999. See id.

  c.  The Supreme Court of New Jersey denied Petitioner's certification on November 17, 1999, and no certiorari was sought by him from the United States Supreme Court. See id. at 2-3.

  d.  The Petition also asserts that Petitioner filed an application for post-conviction relief ("PCR") with the Superior Court of New Jersey. See id. at 3. However, the Petition does not state when this PCR application was filed. Rather, the Petition merely notes that PCR was denied on July 17, 2007 (that is, almost eight years after the Supreme Court of New Jersey denied Petitioner certification as to his direct appeal), without specifying the grounds for such denial. See id. The Petition is silent as to what became of Petitioner's PCR application on appeal. See generally, Docket Entry No. 1.

4. This Court's own research has revealed the information omitted from the Petition. See Louis, 2010 WL 2557181.

Specifically, the Appellate Division detailed the relevant developments as follows:

> . . . James Jean Louis appeals from the denial of his application for. . . PCR - filed ten years after his conviction . . . . In 1996, defendant was convicted by a jury of [various offenses].  On May 24, 1996, the Law Division imposed an aggregate sentence of sixty years incarceration with thirty-five years of parole ineligibility.  Along with his three co-defendants, [defendant] pursued an appeal to this court from that conviction.  In a consolidated opinion we affirmed as to all defendants, and the Supreme Court thereafter denied certification [in 1999].  On May 26, 2000, almost exactly four years after the entry of the judgment of conviction, defendant filed his first pro se PCR application.  On March 19, 2002, after counsel was assigned to represent defendant, the Law Division entered an order dismissing defendant's PCR application without prejudice, upon defendant's request.  Thus, instead of pursuing the then-pending PCR application to its natural conclusion, defendant was advised by his appointed PCR counsel to move for a new trial in the Law Division on the ground of newly discovered evidence.  In March 2002, PCR counsel wrote defendant advising him of the "withdraw[al]" of the PCR application, and explained that an attorney in the Union County Office of the Public Defender would contact defendant "within the next few weeks."  The letter also expressly stated, "[p]lease contact me if you have further questions or concerns or if you do not hear from the Union [Region] Public Defender's Office after [three] weeks or so."  True to PCR counsel's letter, . . . an Assistant Deputy Public Defender assigned to the Union Region contacted defendant on May 23, 2002, by mail.  The public defender's letter of that date explicitly stated that after an investigation and consultation with defendant, "[defense counsel] cannot file a motion for a new trial based upon newly

> discovered evidence" . . . . The letter [also stated that defendant's] "PCR counsel advised [the author of the letter] that [defendant] must refile [his] post-conviction relief petition." Another four years elapsed before a PCR application on defendant's behalf was actually filed in the Law Division [on] December 14, 2006 . . . . On July 17, 2007, . . . Judge Stuart L. Peim entered an order denying defendant's application for PCR "on the grounds that all claims in this PCR are time-barred by Rule 3:22-12." This appeal ensued. . . . Although the initial [PCR] application in 2000 was indubitably timely in light of Rule 3:22-12(a)'s five-year mandate, once defendant voluntarily changed the course of his litigation to instead pursue a motion for a new trial - an event that would be beyond the five-year bar - he became exposed anew to the running of the limitations period. By the time he got around to finally filing the 2006 PCR application, more than a decade had passed since the original judgment of conviction was entered against him. In this posture, defendant was obligated to explain the delay and allege facts showing excusable neglect [under the State's Rule] 3:22-12(a). "The concept of excusable neglect encompasses more than simply providing a plausible explanation for a failure to file a timely PCR petition." State v. Norman, 405 N.J. Super. 149, 159 ([N.J. Super. Ct.] App. Div.2009). Defendant in this case did neither, and Judge Peim was correct in his assessment of defendant's timeliness problem for the current PCR application. . . . [W]e have considered whether the time bar should be relaxed because the public defender should have promptly moved to reinstate the first PCR application or designated counsel on the second PCR application should have argued that application was timely filed because defendant never had adequate representation on the first when it was recommended for dismissal and the basis for the recommendation proved to be unwarranted. See State v. Rue, 175 N.J. 1 (2002). . . . We do

> not [find a basis for relaxation of the time bar] because defendant waited more than four years to file his 2006 PCR application after being advised by the public defender to file another PCR, following being told that the motion for new trial could not be filed.

Id. at *1-5 (original brackets and emphases removed), certif. denied, State v. Louis, 205 N.J. 15 (Nov. 4, 2010).

5. Prior to examining Petitioner's habeas application on the merits, the Court must determine whether the Petition is time-barred. See Long v. Wilson, 393 F.3d 390, 402-03 (3d Cir. 2004) (stating that a court may examine an application for a writ of habeas corpus sua sponte and citing Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002); Herbst v. Cook, 260 F.3d 1039, 1042 & n.3 (9th Cir. 2001); Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000); Kiser v. Johnson, 163 F.3d 326, 328-29 (5th Cir. 1999)).

6. On April 24, 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1). A state-court criminal

5

    judgment becomes "final" within the meaning of §2244(d)(1) upon the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.  Therefore, Petitioner's conviction became final 90 days after November 17, 1999 (that is, 90 days after the date when the Supreme Court of New Jersey denied Petitioner certification as to his direct appeal), i.e., on February 16, 2000, hence triggering Petitioner's 1-year period of limitations.

7. The statute of limitations under § 2244(d) is subject to tolling exception(s), that is, statutory and equitable tolling.  See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003); Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617-18 (3d Cir. 1998).

8. Section 2244(d)(2) requires statutory tolling for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).

9. Here, Petitioner's period of limitations began running on February 16, 2000.  Petitioner's first (later abandoned) PCR

proceedings were commenced on May 26, 2000. These PCR proceedings statutorily tolled Petitioner's AEDPA-based 1-year period of limitations until March 19, 2002, that is, the date of Petitioner's withdrawal of his first PCR application. On that date, i.e., on March 19, 2002, what was left of Petitioner's AEDPA period of limitations restarted running. Because Petitioner "used up" just three months and ten days of his 1-year limitations period by the time he filed his first PCR application, Petitioner had eight months and twenty one days of his AEDPA period left to file a federal habeas petition after he withdrew his PCR application. In other words, Petitioner had until December 11, 2002, to file the Petition at bar. Petitioner, however, failed to so file: he waited until March 29, 2011.

10. Notably, the fact that Petitioner eventually filed his second PCR application is wholly irrelevant to this Court's analysis of statutory tolling. This is so because Petitioner's 1-year AEDPA-based limitations period had already long run by the that second application was filed (i.e., by December 14, 2006).[1] See Long v. Wilson, 393 F.3d

---

[1] Moreover, because Petitioner's second PCR application was dismissed by the state courts as untimely, it could not have statutorily tolled Petitioner's AEDPA limitations period because a filing of a procedurally barred – here, untimely – PCR application cannot meet the statutory tolling requirement for an application being *properly* filed. See Pace v. DiGuglielmo, 544 U.S. 408 (2005) (state PCR petition rejected as untimely under

390, 394-95 (3d Cir. 2004); Schlueter v. Varner, 384 F.3d 69, 78-79 (3d Cir. 2004); see also Forman v. Cathel, Civ. Action No. 04-5309 (JLL) (D.N.J.), Docket Entry No. 24 (dismissing § 2254 petition as untimely under a virtually identical scenario), aff'd, id., Docket Entry No. 30 (stating that "Appellant's habeas corpus petition is time barred and there are no grounds for applying the statutory tolling provision, 28 U.S.C. § 2244(d)(2), or for equitably tolling the limitations period for the entire period it took appellant to file his § 2254 petition" and citing Jones v. Morton, 195 F.3d 159, 160 (3d Cir. 1999)).

11. The foregoing analysis leaves this Court only with the issue of whether equitable tolling should apply to the Petition, covering the entire period from December 11, 2002 (that is, the date when Petitioner's AEDPA-based 1-year period of limitations expired) to March 29, 2011 (that is, the date when Petitioner executed the Petition at bar) - a period exceeding *eight years*.[2]

---

state statute of limitations was not "properly filed" for the purposes of habeas statutory tolling).

[2]   Under the "prisoner mailbox rule," the litigant's submission is deemed filed as of the date when the prisoner hand delivered the submission to prison officials for mailing to the district court, that is, provided that such mailing is eventually received by the district court. See Burns v. Morton, 134 F.3d 109, 112 (3d Cir. 1998).  Because it is self-evident that

12. Relevant to this Court's equitable tolling analysis, federal law – unlike the state provisions addressing the issue of untimeliness of PCR applications – poses a higher bar, because the concept of "excusable neglect" allowing relaxation of state statute of limitations is inapplicable to federal habeas actions. See LaCava v. Kyler, 398 F.3d 271, 275-276 (3d Cir. 2005). The Third Circuit instructs that equitable tolling could be appropriate only "when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition *and* the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims."[3] Id.; see also Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). For instance, extraordinary circumstances have been found where (a) the defendant has actively misled the plaintiff, (b) the plaintiff has in some extraordinary way been prevented from asserting his rights, (c) the plaintiff has timely asserted

---

Petitioner could not have delivered his Petition to his prison officials prior to the date of its execution, the Court – construing the known facts in the light most favorable to Petitioner for the purposes of the instant Memorandum Opinion and Order – presumes that the Petition was "filed" on March 29, 2011, although it is indeed plausible that such filing actually took place on a later date.

[3] Bare claims of "ineffective assistance of counsel" do not provide basis for equitable tolling. See Pace v. DiGuglielmo, 544 U.S. 408 (2005).

his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (d) the court itself has misled a party regarding the steps that the party needs to take to preserve a claim. See Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005). Moreover, even where extraordinary circumstances do exist, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).[4]

13. Here, Petitioner has already litigated the equitable tolling issue during the trial-level and appellate proceedings

---

[4] Recently, the Supreme Court provided guidance on this issue in Holland v. Florida, 130 S. Ct. 2549 (2010). In Holland, the record revealed that petitioner's appointed attorney failed to file a timely federal petition, despite petitioner's many letters emphasizing the importance of doing so; that the attorney did not do the research necessary to find out the proper filing date, despite petitioner identifying the applicable legal rules for him; that the attorney failed to inform petitioner in a timely manner that the State Supreme Court had decided his case, despite petitioner's many pleas for that information; that the attorney failed to communicate with petitioner over a period of years, despite petitioner's pleas for responses to his letters; and that petitioner repeatedly requested the state courts to remove the attorney from his case. In light of these and other facts, the Supreme Court found that such totality of circumstances may – but not must - warrant equitable tolling. See Holland, 130 S. Ct. 2549.

associated with his second PCR application.  The state courts invariably found Petitioner's position wholly without merit, pointing out that Petitioner was unable to meet even the relaxed "excusable neglect" requirement under state law. Moreover, being aware of this crucial procedural deficiency of his Petition, Petitioner failed to include in his 25-page Petition any discussion of circumstances suggesting the applicability of equitable tolling to the Petition. Consequently, this Court is constrained to deem the Petition untimely and to dismiss it accordingly.[5]

---

[5]  Although the Petition at hand is facially time barred, this Court is mindful of Petitioner's pro se litigant status and cannot rule out the possibility that Petitioner: (a) has valid grounds to seek equitable tolling; but (b) somehow omitted to address this vital issue in the instant application and to raise it before the Law Division, the Appellate Division and the Supreme Court of New Jersey.  Therefore, out of an abundance of caution, the Court finds it warranted to inform Petitioner that, in the event Petitioner has a basis to make a bona fide argument that his Petition is timely, Petitioner should seek reconsideration of the instant Memorandum Opinion and Order.  The Court notes that Petitioner's motion for reconsideration need not be a formal submission, and a mere written statement of pertinent facts would suffice (although Petitioner's discussion of these facts must be detailed and shall address the entirety of the period at issue, i.e., from December 11, 2002 (that is, the date when Petitioner's AEDPA-based 1-year period of limitations expired), until March 29, 2011 (that is, the date when Petitioner executed the Petition at bar)).  In the event Petitioner timely submits such a motion for reconsideration, see Local Civil Rule 7.1(i) (providing that a motion for reconsideration "shall be served and filed within 14 days after the entry of the order or judgment"), this Court will direct the Clerk to reopen the instant matter and will examine the facts detailed in Petitioner's motion.

14. Finally, the Court shall determine whether a certificate of appealability ("COA") shall issue as to this matter. The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a COA on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In Slack v. McDaniel, 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. The Court denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c) because jurists of reason would not find it debatable that dismissal of the Petition (as drafted and read in light of the publicly-available record of the state courts' determinations made with regard to Petitioner's PCR proceedings) as untimely is correct.

**IT IS**, therefore, on this 22nd day of November, 2011,

**ORDERED** that Petitioner's application to proceed in this matter in forma pauperis is granted; and it is further

**ORDERED** that the Petition is dismissed, as untimely, pursuant to 28 U.S.C. § 2254; and it is further

**ORDERED** that the Court retain jurisdiction over this matter for a period of thirty days from the date of entry of this Memorandum Opinion and Order in order to entertain any motion for reconsideration Petitioner may file, if such motion is timely submitted; and it is further

**ORDERED** that the Court denies Petitioner a certificate of appealability, pursuant to 28 U.S.C. § 2253(c); and it is finally

**ORDERED** that the Clerk shall serve this Memorandum Opinion and Order upon Petitioner by regular U.S. mail and close the file in this matter.

s/Claire C. Cecchi  
**CLAIRE C. CECCHI**  
**United States District Judge**